IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRESTON OLSEN, individually,
and as Personal Representative of the
Estate of Dorothy Olsen, Deceased,

        Plaintiff,

vs.                                                 CIVIL NO.  06-322 MCA/LFG

WAL-MART STORES, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SECOND CONTINUANCE

THIS MATTER is before the Court on Plaintiff's Motion for Second Continuance [Doc. 30]. The Court has considered the motion and response. Plaintiff's reply was due on November 2, 2006, but no reply was filed. Oral argument is not necessary. For the reasons stated hereafter, the motion is denied.

### Background

Plaintiff Preston Olsen ("Olsen") filed a complaint against Wal-Mart Stores, Inc. in the Second Judicial State District Court in Albuquerque, New Mexico. He alleged that on March 27, 2003, his wife Dorothy, then age 77, stepped out of her car at the Wal-Mart Store parking lot located on Carlisle Boulevard within the City of Albuquerque. Olsen contends that his wife slipped on rocks while she was getting down from her car and fell backwards, hitting her head. He contends that within a month of this accident, she died as a proximate cause of the slip and fall.

Defendant denies liability and also denies that the fall caused or contributed to the cause of Dorothy Olsen's death. The official death certificate, a document certified by an examining physician, attributes the cause of death to "natural causes."

The lawsuit was filed on March 22, 2006, just a few days before the expiration of New Mexico's three-year statute of limitations for personal injury actions.

At the Fed. R. Civ. P. 16 scheduling conference conducted by the Court on June 9, 2006, Olsen's counsel was questioned as to whether any expert had opined, within a reasonable medical probability, that the death was proximately caused by the slip and fall which occurred one month before. Olsen's counsel reported that, based on conversations between Olsen and his wife's physician, counsel expected that the doctor would provide the proximate cause testimony, and would link the fall to the subsequent death.

On June 12, 2006, the Court entered its scheduling order [Doc. 12] establishing appropriate case management deadlines. The Court gave Olsen until September 8, 2006 to disclose his expert witnesses and to provide Fed. R. Civ. P. 26 expert reports; Defendant was given until October 10, 2006 to disclose its experts and provide expert reports. The close of discovery was set for November 9, 2006. In its Initial Pretrial Report filed July 11, 2006 [Doc. 14], the Court set a pretrial conference for May 1, 2007, and scheduled a trial due to commence on June 12, 2007.

Olsen had did meet the initial expert disclosure deadline of September 8, and requested an extension. The Court conducted a second Rule 16 conference on September 21, 2006, and again inquired whether Olsen's counsel had spoken to Dorothy Olsen's doctor, and whether the doctor was prepared to state, within a reasonable medical probability, that Dorothy Olsen's death was caused by the slip and fall. Counsel had not yet spoken with the doctor, but still believed that the doctor would provide the requisite proximate cause link. The Court granted Olsen's request for an extension of time within which he should file expert reports, and, thereafter, amended the scheduling order to extend discovery as well until November 30, 2006. The new expert disclosure and report production deadline was September 29, 2006.

2

Olsen failed to provide Defendant with the expert report by the extended September 29, 2006 deadline. Instead, Olsen filed this second motion for extension, contending that additional time was necessary to provide Wal-Mart with Olsen's expert report. Olsen contends that Dorothy's doctor "has been resistant to speak with either counsel or Plaintiff, or otherwise provide a report." Olsen alleges that his wife, Dorothy, was "generally healthy and active before her fall in front of Wal-Mart. Immediately following her slip and fall in front of Wal-Mart, she was hospitalized and her health deteriorated until her death four weeks later." Thus, he concludes that Wal-Mart is responsible for Dorothy's death. He does not provide any affidavit, doctor's report or other evidence to support his claim of Dorothy's prior good health.

## **Analysis**

A court has discretion to grant a motion enlarging deadlines in a scheduling order when good cause is shown. Good cause in this context requires a showing that the scheduling order deadline could not be met, notwithstanding a party's diligence. Denmon v. Runyon, 151 F.R.D. 404, 407 (D. Kan. 1993); *see also* Burks v. Oklahoma Publishing Co., 81 F.3d 975, 978 (10th Cir. 1996)(applying the abuse of discretion standard to the review of a district court order refusing to modify a scheduling order because good cause was not shown).

Dorothy's death occurred more than three years ago. Thus, there was ample time for Olsen to investigate and determine if Dorothy's slip-and-fall was related to the subsequent death. While it is clear that Olsen believes this to be the case, he must have more than a theory in search of an expert. Olsen had many years prior to initiating litigation to obtain verification of his suspicion from her doctor or from other experts. He also had ample time since filing suit to nail down this critical information. He's known since the date of his receipt of his wife's death certificate, which he obtained for Social Security benefit purposes, that "natural causes" was listed as the reason for his

3

wife's death. There is no indication that in the years following her death that Olsen sought to correct, challenge or dispute that certificate or its conclusion.

Cause of death requires expert testimony and due diligence would contemplate that this vital link was established. Olsen reportedly told his attorney that Dr. Carabajal, Dorothy's physician, would testify that the accident at Wal-Mart was the cause, or at least a contributing cause, of Dorothy Olsen's death. Yet, to date, neither Dr. Carabajal nor any other expert will confirm Olsen's theory, and no expert has come forth willing to state an opinion within the requisite reasonable medical probability that the slip-and-fall caused or contributed to the cause of death.

When the Court extended the expert disclosure deadline at Olsen's request, it was incumbent on Olsen or his counsel to do everything reasonably necessary to meet with the doctor to obtain verification of that opinion. The present motion asserts that counsel has tried by phone, e-mail and facsimile to contact the doctor, but Olsen provides no verification of those efforts. For example, Olsen does not verify the dates and times of the phone calls, and fails to submit copies of the e-mails or facsimiles from which the Court could examine the dates to determine if the efforts were reasonably timely and sustained. Without verification, the Court is unable to conclude that the efforts were sufficiently reasonable.

Moreover, the second motion for continuance does not seek more time to obtain information from Dr. Carabajal, but requests more time to find a new expert. No specific length of time is sought, for example, twenty or thirty days. No new expert is identified; no appointment has been set; nothing more than a hope is shown that another expert will agree with Olsen's theory. Olsen offers no explanation as to why another expert was not consulted earlier in the course of litigation.

In sum, the Court cannot conclude that Olsen has demonstrated any good cause for another extension. The press of business in other matters is insufficient. Indeed, our circuit recently

4

determined that an attorney's workload, even if the attorney is "immersed" in other cases, does not, as a matter of law, constitute excusable neglect. United States v. Mitchell, ___ F.3d ___, 2006 WL 2709635, at *3 (10th Cir. 2006).

Case management deadlines are imposed as part of the Court's responsibilities under the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* ("CJRA"). These deadlines are intended to expedite the disposition of cases and to lessen the financial burdens caused by delay. The CJRA's legislative history states in relevant part:

> The purpose of this legislation is to promote for all citizens--rich or poor, individual or corporation, plaintiff or defendant--the just, speedy, and inexpensive resolution of civil disputes in our Nation's Federal courts.

S. Rep. No. 101-416, at 1 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802.

Judicial case management is an important step in eliminating delay. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482 (1989). The purpose of the CJRA is to alleviate the dual problems of cost and delay in federal civil litigation. Studies by the Federal Judicial Center show that courts with the least of amount of delay characteristically keep stricter control of cases by precise scheduling and enforcement of case management deadlines. The federal study concludes that "a court can handle its case load rapidly only if it takes the initiative to require lawyers to complete their work in a timely fashion." Steven Flanders, Case Management and Court Management in United States District Courts 17 (1977).

Case management deadlines were intended to afford the parties sufficient time to obtain information necessary to prosecute and defend the case. The Court already extended the case management deadlines when Olsen professed difficulty in having his expert provide the necessary proximate cause opinion. We are fast approaching the expiration of all case management deadlines

5

and an upcoming trial.

The delay increases the expenses and burdens on the Defendant. A corporation is entitled to the same fair and equal treatment as the Court affords an individual, and so long as a cloud of uncertainty hangs over Wal-Mart, it is required to incur costs and expenses in defending itself.

The Court concludes that there is no good cause for a further extension.

IT IS THEREFORE ORDERED that Olsen's motion is DENIED.

                                             *Lorenzo F. Garcia*
                                             Lorenzo F. Garcia
                                             Chief United States Magistrate Judge